IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DONALD PADILLA,

        Plaintiff,

v.                                  No. CV 10–1234 LAM/SMV

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 19)* and its accompanying *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 20)* (hereinafter, collectively, "motion"), filed in this case on July 21, 2011. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See Documents 7* and *9*. The Court has reviewed Plaintiff's *Motion (Docs. 19, 20)*, *Defendant's Response to Plaintiff's Motion to Remand or Reverse Administrative Agency Decision (Doc. 21)*, filed September 22, 2011, Plaintiff's *Reply to Defendant's Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 22)*, filed October 4, 2011, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that the decision

of the Commissioner of the Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

## I.  Procedural History

On March 31, 2006, Plaintiff Donald Padilla filed an application for Supplemental Security Income alleging that he had been disabled since that date.  (*R. at 49-52.*)  His application was denied at the initial level on June 8, 2006 (*R. at 40-42*) and at the reconsideration level on September 25, 2006 (*R. at 34–36*).  On February 6, 2007, Plaintiff requested a hearing (*see R. at 13*)[1], and on December 3, 2007, Administrative Law Judge (hereinafter "ALJ") George Reyes conducted a hearing (*R. at 170*).  Plaintiff was present and testified at the hearing (*R. at 173–85*), and he was represented by counsel (*R. at 172*).

On March 17, 2008, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  (*R. at 10–19.*)  On March 19, 2008, Plaintiff requested that the Appeals Council review the ALJ's decision.  (*R. at 8-9.*)  On October 7, 2009, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner.  (*R. at 2–5.*)  The denial stated that the Appeal Council reviewed additional evidence that was submitted, but failed to list the additional evidence that was submitted. (*R. at 2* and *5.*)

---

[1]The Court notes that, while the Administrative Law Judge states that Plaintiff requested a hearing on February 6, 2007, the index to the Record states that the hearing was requested on October 23, 2006.  The index cites to Exhibit B1, with no page number, and this exhibit does not appear to be included in the Record.  The Court further notes that page 33 of the Record is a "Request for Reconsideration," dated October 23, 2006, with a handwritten note "treat as 501 Hearing."

Plaintiff appealed the Appeals Council's decision to this Court on December 10, 2009 in Civil Case No. 09-1161 JB/LAM.   In that case, the Social Security Administration filed an unopposed motion to remand the case to the Appeals Council, stating that the Appeals Council received the additional evidence, however that evidence was not entered into the record, so the Commissioner could not include it in the certified administrative record.   [*Doc. 21* - filed in Case No. 09-1161 JB/LAM].  On August 23, 2010, the Court remanded the case to the Commissioner to "reopen Plaintiff's request for review of the ALJ's decision so that it can properly consider the additional evidence Plaintiff submitted and enter any additional exhibits into the record." [*Doc. 22* - filed in Case No. 09-1161 JB/LAM].  On remand, the Appeals Council considered the additional evidence[2] and, on October 26, 2010, again denied Plaintiff's request for review of the ALJ's decision, stating that the new evidence pertained to a time period later than the date of the ALJ's decision.  (*R. at 187-90*).  This denial again made the ALJ's decision the final decision of the Commissioner.  On December 23, 2010, Plaintiff filed his complaint in this case.  [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the

---

[2]The additional evidence is listed in the October 26, 2010 Appeals Council Order (*R. at 191*), and is included in the Record at pages 195-210.

plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. §§ 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) he is not engaged in "substantial gainful activity;" and (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Krauser v. Astrue,* 638 F.3d 1324, 1326 (10th Cir. 2011)*; Wilson v. Astrue,* 602 F.3d 1136, 1139 (10th Cir. 2010); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (RFC), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 16, 1959.  (*R. at 49.*)  Plaintiff states that he completed the 12th grade in high school (*R. at 63*), and that he worked as a "Lead Man" from 1978 to 1992, in which he set up tests and stacked sand bags, and as a paving operator from 2001 to January 1, 2003 (*R. at 59*).  Plaintiff alleges that he became disabled on March 31, 2006 due to a back and right ankle injury.  (*R. at 49* and *58*.)

Plaintiff's medical records document treatment from Presbyterian Medical Services (*R. at 86, 88-95, 136-37, 152-53, 155-56*); Socorro General Hospital (*R. at 87, 134, 162-69, 209-10*); Presbyterian Hospital emergency room (*R. at 101-10* and *118-122*); Presbyterian Heart Group (*R. at 124-29*); Presbyterian Healthcare Services (*R. at 111-17* and *135*); and Ravi Bhasker, M.D. (*R. at 159-61*).  Plaintiff's medical records include: Medical Assessments of Ability to do Work-Related Activities - Physical (*R. at 96*), Non-Physical (*R. at 97*), and Mental (*R. at 98-99* and *204-05*) (all performed by Rachel Evans, M.D., and dated November 12, 2007); a Physical Residual Functional Capacity Assessment by Janice Kando, M.D., dated June 8, 2006 (*R. at 140-47*); a Disability Determination Examination by Mitchell Simson, M.D., on June 3, 2006 (*R. at 148-50*); a Disability Determination Examination by Frank Hesse, M.D., on March 17, 2009 (*R. at 206-08*); a Psychological/Vocational Evaluation by Clifford O. Morgan, Ph.D., on May 15, 2008 (*R. at 196-203*); and a Psychiatric Review Technique by Clifford O. Morgan, Ph.D., on May 15, 2008 and signed on August 4, 2008 (*R. at 216-29*.)  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since March 31, 2006, the date of Plaintiff's application. (*R. at 15*.)  At step two, the ALJ found Plaintiff "has the following severe impairments: (1) Right Knee Osteoarthritis; (2) Obesity." *Id.*  The ALJ found that Plaintiff's low back pain and right ankle injury "do[] not seem to cause more than minimal limitation in his ability to perform basic work activities, since he underwent a fusion in 1992, and the cane that he uses has not been prescribed by any doctor." *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R.

§ 404, Subpt. P, App. 1. *Id.*

Before step four, the ALJ determined that Plaintiff has the RFC to perform the full range of sedentary work. (*R. at 15-16*.) In support of his RFC finding, the ALJ states that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC]." (*R. at 16*). Examples of these inconsistencies noted by the ALJ include: that Plaintiff "admitted that he was able to lift 100-120 pounds occasionally, and 50 pounds frequently, prior to his alleged back/ankle injuries," that "[n]ow he alleges that he cannot even pick up a coffee cup off the floor, because he cannot bend or stoop," however, Plaintiff's treating physician, Dr. Evans, found that Plaintiff "can occasionally/frequently lift less than 5 pounds and stoop/crouch occasionally;" that Plaintiff's claim that he cannot read or write "is inconsistent with the fact that he is a high school graduate;" that Plaintiff "denies seeking help for emotional or mental problems, but evidently takes medications for anxiety;" that Plaintiff testified that he had a right ear problem in early 2006, but failed to mention such a problem during a June 2006 consultative examination or in a form prepared before the hearing, and he has not seen a doctor for the problem; that, despite claiming knee pain, a radiology report found only mild osteoarthritis of the right knee and that the left knee is normal; that Plaintiff testified at the hearing that he went through 11th grade, but stated in a document that he completed the 12th grade and a doctor noted that he had a 12th-grade education; and that Plaintiff alleges he has used a cane since March 15, 2006, which is not prescribed by a doctor, and which he carries in his right hand despite the medical assessment form finding "bilateral hand arthritis." (*R. at 16-17*). At step four, the ALJ

found that Plaintiff was unable to perform any of his past relevant work, so he proceeded to the fifth step. (*R. at 18.*)

At the fifth and final step, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (*R. at 18-19.*) The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*R. at 19.*)

## V.  Analysis

Plaintiff contends that the ALJ erred for the following reasons: (1) the ALJ failed to afford Plaintiff's treating doctor's opinions sufficient weight; (2) the ALJ's RFC and resulting credibility findings are unsupported and inconsistent with Plaintiff's treating physicians' findings; (3) the ALJ's application of the Grids is unsupported by substantial evidence; and (4) the ALJ  failed to develop the record regarding Plaintiff's anxiety, depression, hearing loss and obesity.  [*Doc. 20* at 6-21].  As relief, Plaintiff asks the Court to reverse the ALJ's decision or, alternatively, to remand the case for a new hearing before an ALJ.  *Id.* at 21.

In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ properly considered medical source opinions, that substantial evidence supports the ALJ's RFC and credibility findings, that the ALJ properly relied on the Grid rules to find that Plaintiff was not disabled, and that the administrative record is properly developed.  [*Doc. 21* at 5-14].  Defendant, therefore, states that the ALJ's decision is based on substantial evidence and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed. *Id.* at 14.

### A.  The ALJ's Consideration of Plaintiff's Treating Physician's Opinions

Plaintiff's first claim is that the ALJ failed to properly afford the opinions of his treating physician, Dr. Evans, sufficient weight.  [*Doc. 20* at 6].  Plaintiff contends that Dr. Evans provided a medical opinion that Plaintiff has the RFC for less than a full range of sedentary work, which contradicts the ALJ's finding that Plaintiff can perform a full range of sedentary work.  *Id.* at 6-7 (citing *R. at 17* and *96-98*).  Plaintiff contends that the ALJ's statement that Dr. Evans does not have a long treating history with Plaintiff is erroneous, that the ALJ failed to adequately assess Dr. Evans' opinion, and that the ALJ improperly afforded more weight to the consultative physician's (Dr. Simson) opinion and failed to consider the portions of Dr. Simson's opinion that would preclude sedentary work.  [*Doc. 20* at 7-12].  Defendant, on the other hand, contends that the ALJ properly explained his rationale for the weight he gave to the various medical opinions, that the evidence in the record supports the ALJ's rejection of portions of Dr. Evans' opinion, and that the ALJ properly explained why he did not accept all of the limitations recommended by Dr. Simson. [*Doc. 21* at 5-8].

"When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007).  First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record."  *Id.* (citations omitted).  If the answers to these questions are "yes," then the ALJ "must give the opinion controlling weight," but if the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser

weight." *Id.*  When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d).  Ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004) (citation and internal quotation marks omitted).

The ALJ addressed Dr. Evans' opinions regarding Plaintiff's limitations and found that they were inconsistent with the evidence in the record.  (*R. at 16-18.*)  The ALJ noted that while Dr. Evans "opines that [Plaintiff] has difficulty concentrating and with his memory, [is] unable to read or write," the record shows that Plaintiff finished either 11th or 12th grade. (*R. at 16-17*).  The ALJ stated that, while Dr. Evans believes that "both [of Plaintiff's] knees are bad," "[a] March 7, 2006 Radiology Report [signed by Dr. Wood] ruled out a clinical history of bilateral knee pain," and instead found mild osteoarthritis of the right knee and that the left knee is normal. (*R. at 17*.)  The ALJ found Dr. Wood's opinion and laboratory reports regarding Plaintiff's knees "reliable," and states that his opinion is supported by the consultative examiner.  *Id.*  The ALJ further found that Dr. Evans' conclusion that Plaintiff had bilateral hand arthritis was contrary to Plaintiff being able to hold a cane in his right hand.  (*R. at 17*).  Finally, the ALJ noted that the

record showed that Plaintiff exhibited symptom magnification, which Dr. Simson also observed. (*R. at 16* and *149*).

Having noted that Dr. Evans' opinion was not supported by the evidence in the record, the ALJ then weighed Dr. Evans' opinion using the 20 C.F.R. § 404.1527(d) factors. In explaining why he gave Dr. Evans' opinion less weight, the ALJ explained that Dr. Evans only saw Plaintiff three to four times and noted that Dr. Simson found that Plaintiff "was mildly magnifying his symptoms." (*R. at 17* and *149*). The ALJ also noted that Dr. Evans' opinion was inconsistent with other evidence in the record. The Court finds that the ALJ, thus, properly evaluated Dr. Evans' medical opinions by first determining whether they were consistent with the evidence in the record, and then, after finding that they were not, by explaining which parts of Dr. Evans' opinion the ALJ was discounting and why. The ALJ's consideration of Dr. Evans' opinion contains "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (holding that the ALJ's statement that he gave "very little weight" to opinions of various treating physicians because those physicians "did not have the opportunity to see or did not give weight to contrary evidence showing [the plaintiff's] greater functional capacity" satisfied the requirement to consider the plaintiff's treating physician's opinions when the ALJ cited to contrary, well-supported medical evidence) (citation and internal quotation marks omitted).

The Court further finds that Plaintiff's claim that the ALJ improperly afforded more weight to Dr. Simson's opinion without including all of Dr. Simson's findings is without merit. While the

11

ALJ stated that the RFC "is supported by the DDS' Mitchell Simson, M.D. who opined, in part: '. . . He would be a candidate for a sedentary job only with no restrictions as to pushing or pulling or handling of fine or course . . . There are no apparent restrictions as to cognition, vision or hearing that are significant,'" (*R. at 17-18*), the ALJ did not state that he gave more weight to Dr. Simson's opinion than he did to Dr. Evans' opinion.  While the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon," Dr. Simson's opinion is contradicted by the evidence in the record, and the ALJ had already explained what evidence he was relying on for his RFC determination and was merely stating here that a portion of Dr. Simson's opinion supported that finding.  *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all the evidence, but an ALJ is not required to discuss every piece of evidence.").  Moreover, the ALJ explained that he rejected Dr. Simson's opinion regarding Plaintiff's bi-lateral knee problems because Dr. Simson did not have any records to review, including Dr. Woods' radiology report, which concluded that Plaintiff's left knee is "normal." (*R. at 18 n.3*.)  For these reasons, the Court finds no error by the ALJ in his consideration of Dr. Evans' and Dr. Simson's respective opinions.

## B.  The ALJ's Credibility Findings

Next, Plaintiff contends that the ALJ erred by finding that Plaintiff can perform a full range of sedentary work "in large part because he did not believe [Plaintiff's] claims of pain and functional limitations."  [*Doc. 20* at 12].  Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence in the record.  *Id.* at 12-16.

An ALJ's decision, "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."   SSR 96-7p at *4 (July 2, 1996); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) ("[C]redibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence.") (citation and internal quotation marks omitted).

The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record." (*R. at 16*).  The ALJ here sufficiently supported his finding that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC assessment.  *Id.*  The ALJ cites to evidence in the record that supports his credibility finding, such as: (1) the inconsistency between Plaintiff stating that he cannot pick up a coffee cup off the floor, and his treating physician (Dr. Evans) finding that he can lift less than 5 pounds occasionally/frequently and can stoop/crouch occasionally; (2) Plaintiff stating in his Disability Report that he has not sought help for emotional or mental problems, but that he takes medications for anxiety; (3) Plaintiff testifying that he has a right ear problem that became worse in 2006, but not mentioning such a problem during a June 2006 consultative examination or in a form prepared before his hearing, and not seeing a doctor for the problem; (4) Plaintiff claiming that his knees are "bad," but a radiology report ruled out a clinical history of

bilateral knee pain and, instead, found mild osteoarthritis in his right knee and that his left knee is normal; (5) Plaintiff testifying that "he went as far as the 11th grade," but in a document he completed before the hearing Plaintiff stated that he completed the 12th grade, and one of Plaintiff's doctors reported that Plaintiff stated that he "has a 12th grade education;" and (6) Plaintiff using a cane, although the cane is not prescribed by a doctor and the Medical Assessment Form states that Plaintiff has bilateral hand arthritis.  (*R. at 16-17*).  The Court finds that the ALJ provided specific reasons for his findings regarding Plaintiff's credibility, that his reasons are supported by the evidence in the record, and it is clear what weight the ALJ gave to the Plaintiff's statements and the reasons for that weight.  The Court, therefore, finds that the ALJ did not err in his credibility findings.

The Court also rejects Plaintiff's contention that the ALJ failed to apply the test set forth in *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) regarding Plaintiff's subjective complaints of pain.  Under *Luna*, if a pain-producing impairment is demonstrated by objective medical evidence, the ALJ must consider whether there is a nexus between the impairment and the alleged pain and, if there is, the ALJ must next consider all of the relevant evidence to determine whether the claimant's pain is in fact disabling.  834 F.2d at 163.  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the ALJ's RFC finding.  (*R. at 16*).  As stated in the previous paragraph, the ALJ set forth several reasons, with support from the record, regarding why he found Plaintiff's allegations incredible.  Plaintiff contends that the ALJ erred by failing to

14

address that Plaintiff complained of pain as a 9 on a scale of 10 at a clinic visit in April 2007, that Plaintiff was diagnosed during that visit with chronic pain and was referred to an orthopedics clinic, and that Dr. Evans assessed Plaintiff's pain as a chronic condition. [*Doc. 20* at 17]. The Court finds that the ALJ sufficiently stated what evidence he relied on in determining that Plaintiff's allegations of pain were not credible, and his failure to discuss portions of the evidence in the record is not error. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (upholding the ALJ's decision regarding the claimant's pain allegations where the ALJ "did not simply recite the general factors he considered, he also stated what specific evidence he relied on in determining that plaintiff's allegations of disabling pain were not credible," and stating that a "formalistic factor-by-factor recitation of the evidence" is not required); *Thacker v. Comm'r of Soc. Sec.*, No. 02-6138, 99 Fed. Appx. 661, 664-665, 2004 WL 1153680 (6th Cir. May 21, 2004) (unpublished) (declining to remand for ALJ's failure to discuss SSA employee's observations of claimant). *See also Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."). The Court, therefore, finds that this claim should be denied.

### C.  The ALJ's Application of the Grids

Next, Plaintiff contends that, because Plaintiff has several nonexertional impairments that cause functional limitations, the ALJ improperly applied the Grid rules to find that Plaintiff is not disabled. [*Doc. 20* at 17]. Plaintiff also contends that the ALJ improperly failed to assess the impact of Plaintiff's obesity on his functional limitations. *Id.* at 18. In response, Defendant states that the ALJ properly applied the Grid rules because he found that Plaintiff's RFC was for a full range of

sedentary work and that Plaintiff's vocational profile matched all of the elements of a Grid rule. [*Doc. 21* at 12].

The Grids provide the Commissioner "administrative notice of the number of jobs that exist in the national economy at the various functional levels (*i.e.*, sedentary, light, medium, heavy, and very heavy)." *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984) (citing 20 C.F.R. § 404, subpt. P, App. 2, § 200.00(b)).  If an individual's age, education, training, and RFC all coincide with the criteria of a particular rule in a Grid, the Commissioner may apply the Grid rule to determine whether or not the claimant is disabled.  *Channel*, 747 F.2d at 579.  Since a claimant's RFC is one aspect of the Grid rules, it must precisely match the RFC described in the rule.  *Id.* at 579-80.  Grid rules, however, only include RFC categories based on *exertional* limitations, not *nonexertional* limitations.  *Id.* at 580.  Exertional impairments may limit physical strength, whereas nonexertional impairments, including visual and hearing limitations and pain, do not directly limit physical strength but may reduce an individual's ability to perform gainful work nonetheless.  *Id.*  "[W]here a person has solely a nonexertional impairment(s), the [Grids] do not direct conclusions of disabled or not disabled;" instead, "[c]onclusions must . . . be based on the principles in the appropriate sections of the regulations, giving consideration to the [Grids] for specific case situations in Appendix 2."  SSR 85-15  at *1.  In addition, if nonexertional impairments narrow the range of possible work the claimant can perform, the Commissioner may only use the Grids as a "framework" for determining whether, in light of all the claimant's impairments, he or she has meaningful employment opportunity within the national economy.  *See* 20 C.F.R. pt. 404, subpt. P, App. 2, 200.00(e)(2).  In such cases, the ALJ may need to produce a vocational expert to testify as

to whether specific jobs appropriate to the claimant's limitations exist in the national economy. *Channel*, 747 F.2d at 581 (stating that when nonexertional impairments limit the range of jobs available to a claimant, "the Secretary must produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy") (citation omitted and internal quotation marks omitted).

Here, the ALJ did not find any nonexertional limitations that would narrow the range of possible work Plaintiff can perform. The ALJ stated that he considered Plaintiff's obesity and that, as a result of his obesity, Plaintiff "can be expected to stand and walk no more than two hours in all in an eight hour [work] day." (*R. at 18*). This limitation fits the requirements for a full range of sedentary work. *See Dewey v. Barnhart*, No. 05-3329, 178 Fed. Appx. 794, 797, 2006 WL 1109767 (10th Cir. April 27, 2006) (unpublished) ("[S]edentary work requires 'periods of standing or walking [that] should generally total no more than about 2 hours of an 8-hour work day.") (quoting SSR 83-10 at *5). The ALJ also considered Plaintiff's allegations of lower back pain and found that his lower back pain did not cause more than minimal limitation in his ability to work. (*R. at 15*) ("The claimant has been complaining of low back pain and right ankle injury; however, this does not seem to cause more than minimal limitation in his ability to perform basic work activities, since he underwent a fusion in 1992, and the cane that he uses has not been prescribed by any doctor."). The Court finds no evidence in the record to the contrary. Therefore, because the ALJ found that Plaintiff's age, education, training, and RFC all coincide with the criteria of a full range of sedentary work, and because the ALJ found that Plaintiff has no nonexertional limitations that limit his ability to work, the ALJ properly applied the Grid rules to determine that Plaintiff is not disabled.

The Court also rejects Plaintiff's contention that the ALJ failed to follow "the proper evaluation of obesity" as set forth in *DeWitt v. Astrue,* No. 09-3250, 381 Fed. Appx. 782, 2010 WL 2181759 (10th Cir. June 2, 2010) (unpublished). [*Doc. 20* at 18]. In *DeWitt*, the Tenth Circuit remanded the ALJ's decision because the ALJ gave substantial weight to the testimony of a physician who the ALJ mistakenly thought had given an opinion about the functional effects of the claimant's obesity, when instead, that physician's opinion was at odds with the opinion of one of the claimant's treating physicians, who had found that the claimant could not perform sedentary work. 2010 WL 2811759 at *3-4. Here, the ALJ's RFC limitation to sedentary work is supported by the evidence in the record and is not contradicted by Plaintiff's treating physician, or by any other evidence in the record. The ALJ's decision includes his consideration of Plaintiff's obesity and the Court finds no error. *See Merriman v. Astrue*, No. CIV-10-233-F, 2011 WL 902178 at *6 (W.D. Okla. Feb. 22, 2011) (unpublished) (finding that the ALJ's consideration of the claimant's obesity was not contrary to the holding in *DeWitt* because it was supported by the evidence in the record and the record did not contain findings that conflicted with the ALJ's RFC assessment); and *Stephens v. Astrue*, Civil Action No. H-10-3251, 2011 WL 6826828 at *15 (S.D. Tex. Dec. 28, 2011) (unpublished) ("*DeWitt* presents an instance of an ALJ who relied only on an incomplete and conclusory medical opinion and ignored evidence to the contrary. In contrast, here the ALJ relied on the entire record and, unlike in *DeWitt*, the ALJ did not ignore any contradictory medical evidence.").

The Court further rejects Plaintiff's contention that the ALJ's reliance on the Grids was inappropriate because Dr. Simson opined that Plaintiff would be required to change positions on the

job. [*Doc. 20* at 18] (citing *Ragland v. Shalala*, 992 F.2d 1056, 1059 n.4 (10th Cir. 1993). While

Dr. Simson stated that Plaintiff "would probably be required to be able to change position and get

up and move around briefly every hour," the ALJ did not adopt this finding, it is not part of

Plaintiff's RFC, and it is not supported by other evidence in the record. (*R. at 150*). Plaintiff's

treating physician, Dr. Evans, however, found that Plaintiff could sit with normal breaks for less

than four hours in an eight-hour workday (*R. at 96*), and Plaintiff's Physical RFC Assessment by

Dr. Kando found that Plaintiff could sit with normal breaks for about six hours in an eight-hour

workday (*R. at 141*). In contrast, the medical evidence in *Ragland* showed that the claimant there

was advised to refrain from prolonged sitting, and the record contained no evidence that contradicted

this advice. 992 F.2d at 1058. While the Tenth Circuit in *Ragland* stated that reliance on the Grids

for light or sedentary work is inappropriate when alteration of positions between sitting and standing

is a possibility, the ALJ's decision in that case was remanded because the ALJ failed to expressly

determine whether and to what extent the claimant's impairment interfered with the physical

demands of sedentary work. *Id.* at 1059. Furthermore, the cases cited by the Tenth Circuit in

*Ragland* regarding the appropriateness of relying on the Grids when alteration of position is a

possibility all involve cases where the claimants *must* alternate sitting or standing and are not

functionally capable of sitting for the periods required in the definition of sedentary work. *See*

*Talbot v. Heckler*, 814 F.2d 1456, 1463-64 & n. 5 (10th Cir. 1987) (explaining that "where an

individual must alternate sitting or standing, '[s]uch an individual is not functionally capable of

doing [] the prolonged sitting contemplated in the definitions of sedentary work'") (citing Soc. Sec.

R. 83-12); *Delorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) ("[W]hen a claimant must

19

alternate periods of sitting and standing, the ALJ is directed to consult a vocational expert.") (citation omitted); *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 498-99 (6th Cir.1985) (finding that reliance on the Grids was in error because the evidence showed that the claimant must be allowed to alternate between sitting and standing and, therefore, the evidence did not support the ALJ's conclusion that claimant could perform sedentary work).  Here, the evidence in the record does not show that Plaintiff *must* alternate sitting or standing or that he is not capable of sitting for two hours in an eight-hour workday, which is required for sedentary work.  In fact, Dr. Simson, upon whom Plaintiff relies for this contention, stated only that Plaintiff "would probably" be required to alternate position briefly every hour, and other evidence in the record does not support this finding.  The Court, therefore, finds that the ALJ did not err in relying on the Grids.  *See* Soc. Sec. R. 83-12 ("Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.").

### D. Development of the Record

Plaintiff's final claim is that the ALJ failed to develop the record regarding Plaintiff's anxiety, depression, hearing loss and obesity.  [*Doc. 20* at 19].  Specifically, Plaintiff contends that the ALJ should have ordered a psychological consultative examination and audiology tests, and that the Appeals Council erred in failing to review the additional evidence that was submitted after the ALJ's decision. *Id.* at 19-21.  Defendant responds that a consultative examination was not necessary because the record does not indicate that the medical evidence was inconclusive, incomplete or conflicting, and that the Appeals Council correctly concluded that the evidence submitted on remand

did not provide a basis for changing the ALJs's decision because it related to a time period after the ALJ's decision.  [*Doc. 21* at 13-14].

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (citation omitted).  At the same time, "[t]he Secretary has broad latitude in ordering a consultative examination." *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990).  The Tenth Circuit has held that there are three instances when such an examination is required: (1) "where there is a direct conflict in the medical evidence;" (2) "where the medical evidence in the record is inconclusive;" and (3) "where additional tests are required to explain a diagnosis already contained in the record." *Barrett v. Astrue*, No. 08-2300, 340 Fed. Appx. 481, 486, 2009 WL 2400267 (10th Cir. Aug. 6, 2009) (unpublished) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)). "[T]he ALJ should order a consultative exam when evidence in the record establishes a reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins*, 113 F.3d at 1169; *see also Madrid v. Barnhart*, 447 F.3d 788, 791 (10th Cir. 2006).  The Tenth Circuit has explained that when determining whether an ALJ should have ordered a consultative examination, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167 (citation omitted).

21

The Court finds that the ALJ was not required to obtain a consultative examination based on the evidence in the record at the time of the ALJ's decision.  The evidence that Plaintiff was experiencing hearing loss and was prescribed Citalopram and Lorazepam for Plaintiff's anxiety do not "establish[] the reasonable possibility of the existence of a disability."  *See Hawkins*, 113 F.3d at 1169; *Cf., Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) (finding that a medical diagnosis of a depressive disorder provided evidence "requir[ing] the ALJ to develop the record concerning depression").  In addition, while it is true that evidence not before the ALJ may be presented to the Appeals Council and "becomes part of the administrative record to be considered when evaluating the Secretary's decision for substantial evidence" (*O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)), this "new evidence" must relate to the period on or before the date of the ALJ's decision.  *Id.* at 858 (citing 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.")).   Dr. Morgan's psychological/vocational examination of Plaintiff, which is the evidence Plaintiff contends the Appeals Council should have considered (*Doc. 20* at 20-21), took place on May 15, 2008, which was after the ALJ's March 17, 2008, decision (*see R. at 196* and *19*), and reflects Dr. Morgan's assessment of Plaintiff's "current status."  (*R. at 196*.)  The Court finds that the Appeals Council correctly found that the May 15, 2008 report from Dr. Morgan does not affect the decision about whether Plaintiff was disabled beginning on or before March 17, 2008.  (*R. at 188*.)  The Court, therefore, finds that this claim should be denied.

# VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's ***Motion to Reverse or Remand Administrative Agency Decision*** *(Doc. 19)* is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**


**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**